CHARLES M. HARRELL V. STATE

No. 34,644.   June 6, 1962

*Sam Hoover*, Houston, for appellant.

*Frank Briscoe*, District Attorney, *Carl E. F. Dally, Lee P. Ward, Jr.*, Assistants District Attorney, Houston, and *Leon Douglas*, State's Attorney, Austin, for the state.

MORRISON, Judge.

The offense is rape of a female under the age of 18; the punishment, life.

Prosecutrix, a sixteen-year old Houston girl, testified that she was introduced to appellant by Jerry Daniel, whom she had known for a number of years, and that Jerry accompanied her and appellant on the two dates she had with appellant. She stated that on the second evening she complained of a stomach ache and appellant gave her a small yellow pill and told her that it was a tranquilizer; that soon thereafter she began to feel "kinda drunk or dizzy" and the last thing she remembered was going

to a girl's house in search of a date for Jerry and returning to the automobile occupied by Jerry and appellant. Finally, she woke up in the hospital and felt pain in her private parts, and remained in bed for some ten days.

Jerry Daniel, a sixteen-year-old boy, testified for the State and recounted how he had introduced appellant to prosecutrix and accompanied them on their two dates. At the time of this trial, he was serving a term at the State Training School for having raped prosecutrix on the same night as is charged in the instant indictment. On the first night, he had a girl companion of his own but on the second night, being unable to secure any company, he, appellant and prosecutrix proceeded in his automobile to a secluded spot in the country. He testfied that appellant, who was in the back seat with prosecutrix, took off his pants; that he saw prosecutrix naked, lying on the back seat with appellant on top of her, where he remained for some twenty minutes, moving up and down; and that he heard prosecutrix utter the words "don't" and "stop" during this period. After this, appellant asked him if he would like to get in the back seat and take his place, which he did, had an act of intercourse with prosecutrix, and was followed by appellant who got on top of her again. He stated that each time after appellant had been on top of the girl he told him that he had had an act of intercourse with her. He testified that throughout all the acts of intercourse prosecutrix only mumbled, that he found her private parts to be loose and slippery as the result of her bleeding, and that he finally ascertained she was unconscious. After leaving the place where they had been parked, the three proceeded to a cafe where he and appellant attempted to revive her with coffee and where he saw appellant with a cloth in his hands and his pants open in front. En route, appellant told him that he and the prosecutrix had been taking pills, showed him the box, and instructed him to stop the automobile so that he might hide them. When the coffee failed to revive prosecutrix, they took her to a funeral home where they secured some ammonia inhalants and the aid of attendants, but all efforts to revive prosecutrix failed, and they were advised to take her to a hospital.

Two attendants at the funeral home testified that appellant and Jerry brought prosecutrix to the rear of their place of employment on the night in question, that she was unconscious, and that blood was exuding from her privates. One of the attendants stated that appellant told him that he and Jerry "had been with the girl", and they both testified that when they suggested she be taken to a hospital, after their efforts to revive her had proved

futile, appellant demurred, stating that if they did so an investigation would follow and he would be charged with statutory rape and would probably be sent back to prison.

Four doctors testified concerning prosecutrix's unconscious condition as the result of having taken barbiturates and as to the tear in her vaginal tract, which reached as far as the anus, and stated that she had bled profusely therefrom.

Chemist and toxocologist McDonald testified that he was called into the investigation of this case and examined appellant's clothes and person, that he found in the fly of his undershorts a pubic hair which was identical in all respects with a pubic hair which had been taken from the vaginal area of prosecutrix and was different from appellant's pubic hair.

Appellant's confession, introduced in evidence without objection, recites the full events of the evening, including the statement "* * * I got on top of her (prosecutrix) and had intercourse with her for about 15 or 20 minutes but did not reach a climax."

Appellant, testifying in his own behalf, admitted lying on top of prosecutrix in the back seat of the automobile while she was undressed and endeavoring to have an act of intercourse with her, but denied that he ever had an erection or that he penetrated her sexual organ, though he admitted that he placed his privates against her private parts and attempted to effect entry. He stated that the officers had not accurately transcribed what he had told them and that he signed the confession without reading it. He admitted, however, that he had told one of the employees of the funeral home that he was afraid he would be filed on for statutory rape.

His principal contention on appeal is that penetration was not shown except by his confession. He points out that Jerry admitted on cross-examination that he merely saw appellant on top of prosecutrix and did not witness any actual penetration.

Great stress is placed on the fact that Jerry's underclothes were shown to be bloody while those of appellant were not. We observe that appellant was shown to have taken off his trousers before getting on top of prosecutrix, and the witness did not know whether or not he also removed his underclothes. Jerry stated that he removed none of his clothes but opened the fly of his trousers prior to his act of intercourse.

We have concluded that the State was not, as appellant asserts, without proof of penetration other than from his confession.

The trial was conducted, without objection of appellant, upon the theory that Jerry was not an accomplice, and that question is not before us for review. However, the rule in this Court has been well established that the testimony of an accomplice witness together with the confession of the accused is sufficient to establish the corpus delicti. Scott v. State, 167 Texas Cr. Rep. 77, 318 S.W. 2d 650, and cases there cited.

In Landry v. State, 156 Texas Cr. Rep. 350, 242 S.W. 2d 381, where one of the complaints was that the State had failed to prove the corpus delicti, we said, "We have concluded that this is a case where the facts are in such juxtaposition one to another that only one logical conclusion may be drawn therefrom." We have carefully analyzed the facts before us here and have concluded that they are of such a nature that the mind is led intuitively, or by a conscious process of reasoning, toward the conviction that from the facts proven penetration may be inferred. See Thomas v. State, 108 Texas Cr. Rep. 131, 299 S.W. 408.

During the course of the examination of the two funeral home employees, they gave some testimony which was later by the court ascertained to have been hearsay. As soon as such fact was brought home to the trial court, he withdrew such testimony from the jury's consideration. We fail to find reversible error reflected by the court's refusal to grant a mistrial.

Finding no reversible error, the judgment is affirmed.